[Civ. No. 1329.   Second Appellate District.—May 17, 1913.]

## ADDIE NORAH THOMPSON, Respondent, v. J. IRVING McKENNA, as Administrator of the Estate of John McKenna, Deceased, and J. IRVING McKENNA, Individually, Appellants.

DEED—PRESUMPTION AS TO FACT AND TIME OF DELIVERY.—Possession of a deed is *prima facie* evidence of its delivery, and a grant duly executed is presumed to have been delivered at its date.

ID.—EVIDENCE TO OVERTHROW PRESUMPTION OF DELIVERY.—The testimony of persons present when the grantor executed the deed that they did not see the deed delivered is insufficient to overcome the fact established by such possession and presumption.

ID.—DESCRIPTION OF LAND—SUFFICIENCY—EXTRINSIC EVIDENCE TO AID.—A description of land in a deed as being in the county of "Ventura, state of California, and bounded and particularly described as follows, to wit: The west half of the southwest quarter of section 12, No. 31, containing 70 acres, more or less," is *prima facie* insufficient to identify the property, but extrinsic evidence is admissible as a means of such identification, and reference may be made to the county records for that purpose.

ID.—IDENTIFICATION OF PROPERTY BY SURVEYOR.—Any description in a deed by which the property may be identified by a competent surveyor, with reasonable certainty, either with or without the aid of extrinsic evidence, is sufficient.

ID.—PAROL EVIDENCE TO APPLY DESCRIPTION TO LAND.—Parol evidence is admissible, not for the purpose of adding to or varying the description contained in the deed, but for applying the description to that part of the surface of the earth which is the subject matter of the deed. Whether or not such evidence is sufficient to show that the land can be identified with reasonable certainty is a question of fact for the trial court.

ID.—STRINGENCY OF RULE—WHEN RELAXED.—The rule applied in cases where it is sought to divest the owner of his title in proceedings *in invitum*, should be less stringent in its application to like questions arising in the transfer of real estate by deed in the ordinary way between individuals.

ADVERSE POSSESSION—EVIDENCE TO ESTABLISH—DEFECT IN CONVEYANCE.—In this action to quiet title the evidence supports the finding by the trial court of adverse possession against the claim of the defendant for more than twenty years. The fact that he did not

22 Cal. App.—9

know that the deed under which the possession was held was defective, does not affect the prescriptive right resulting from the adverse occupancy.

APPEAL from a judgment of the Superior Court of Ventura County.   S. E. Crow, Judge presiding.

The facts are stated in the opinion of the court.

G. A. Gibbs, and Catherine A. McKenna, for Appellants.

Joseph Scott, and James L. Irwin, for Respondent.

SHAW, J.—Action to quiet title to land.

The facts of the case are as follows: On November 10, 1890, John McKenna and Norah Anna McKenna were husband and wife.   Plaintiff is the daughter of Norah Anna McKenna by a former husband, and half-sister to defendant J. Irving McKenna, who is the son of John and Norah Anna McKenna. On November 10, 1890, John McKenna, who at the time resided with his family on a ranch in Ventura County, executed a deed of gift to his wife, Norah Anna McKenna, purporting to convey the property to her.   On May 23, 1891, John McKenna died intestate, leaving as his heirs his widow and son, the defendant J. Irving McKenna.   On July 9, 1909, Norah Anna McKenna died intestate, leaving as her sole heirs the plaintiff and defendant.   The latter was appointed and qualified as administrator of her estate.   About March, 1911, upon discovering that the description in the deed so made by his father to his mother was imperfect, and while acting as such administrator, he asserted exclusive claim, right, and ownership to the land described in the complaint in himself as the sole heir of his father, John McKenna, deceased, and on April 24, 1911, upon his petition therefor, letters of administration were issued to him as administrator of said estate. Thereupon plaintiff brought this action to have the title to the land quieted against the adverse claims of J. Irving McKenna, as administrator of the estate of John McKenna, deceased, as well as to him individually, other than as a joint heir with herself in her mother's estate.

The court found that at the time of her death Norah Anna McKenna was, and for a long time prior to her decease had

been, the owner and in possession of the land described in the
complaint; that neither J. Irving McKenna individually, other
than as an heir at law of Norah Anna McKenna, deceased, nor
as administrator of the estate of John McKenna, deceased, had
any right, title, or interest in the property, but that, subject
to the administration of the estate of Norah Anna McKenna,
deceased, title to the land was vested in defendant individ-
ually and plaintiff as the heirs of deceased. Judgment fol-
lowed in favor of plaintiff, from which defendant appeals.

The contention of appellant is that the deed was never de-
livered; that if delivered the land could not be identified
through the imperfect description therein contained, and that
the evidence fails to establish facts sufficient to constitute a
prescriptive title in the estate of Norah Anna McKenna, de-
ceased, as found by the court. Norah Anna McKenna filed
the deed for record on June 1, 1891. Her possession thereof
was *prima facie* evidence of its delivery. Moreover, "a grant
duly executed is presumed to have been delivered at its date."
(Civ. Code, sec. 1055.)    There was no evidence tending to con-
tradict the fact thus established, other than that defendant
and one Nedrick, both of whom were present on November 10,
1890, when the deed was executed, testified that they did not
see the grantor deliver it. This was insufficient to overcome
the fact established by the possession of the deed and pre-
sumption arising under the section of the code cited.

A full and accurate description of the property, as alleged
in the complaint and found by the court, is: "Situated in
Ventura County, California, the west half of the southwest
one-quarter of section twelve, and being the west one-half of
lot thirty-one (31), as the same is designated and delineated
upon that certain map entitled 'Plat of the Rancho Santa
Paula y Saticoy showing the subdivision lines as subdivided
January, 1867, by W. H. Norway, county surveyor of Santa
Barbara County,' and recorded in the office of the county re-
corder of said Ventura County, California, of transcribed
records of Santa Barbara County."    The deed as executed by
John McKenna described as "situate, lying and being in the
county of Ventura, state of California, and bounded and
particularly described as follows, to wit: The west half of the
southwest quarter of section 12, No. 31, containing 70 acres,
more or less."    This description standing alone is *prima facie*

insufficient as a means of identifying the land intended to be conveyed. Notwithstanding this fact, plaintiff was entitled to show by extrinsic evidence that it was in fact sufficient as a means of such identification. "Any description by which the property may be identified by a competent surveyor, with reasonable certainty, either with or without the aid of extrinsic evidence, will be sufficient." (*Law* v. *People,* 80 Ill. 268; *Best* v. *Wohlford,* 144 Cal. 733, [78 Pac. 293].) Parol evidence is admissible, not for the purpose of adding to or varying the description contained in the deed, but for applying the description to that part of the surface of the earth which is the subject matter of the deed. Whether or not such evidence is sufficient to show that the land can be identified with reasonable certainty is a question of fact for the trial court. In addition to the cases cited, see: *McLauchlan* v. *Bonynge,* 15 Cal. App. 239, [114 Pac. 798] ; *Fox* v. *Townsend,* 152 Cal. 51, [91 Pac. 1004, 1007] ; *Houghton* v. *Kern Valley Bank,* 157 Cal. 289, [107 Pac. 113]. The rule applied in these cases, wherein it was sought to divest the owner of his title in proceedings *in invitim,* should be less stringent in its application to like questions arising in the transfer of real estate by deed in the ordinary way between individuals. It appeared that a survey of said rancho wherein the land was located was made in 1867 by W. H. Norway, at which time Ventura County was a part of Santa Barbara County, and that a plat of said survey, transcribed from the records of Santa Barbara County, was recorded in Ventura County; that this was the only map of subdivision of said rancho; that the description contained in the deed applied to this survey of the Rancho Santa Paula y Saticoy, and applied to no other land in Ventura County. Mr. Barnard, called as a witness on behalf of plaintiff, after stating that the property could be readily identified from the description in the deed, was asked how he could do so, and replied: "From the fact that the description used in Norway surveying the ranch in 1867, and that there is no other record, there is no other map, there is no other reference where they used the same combination describing any property in this county, and the deed from Mr. McKenna to his wife describes the property as being in the county of Ventura, . . . and my knowledge of all of the maps that are here of record, all of the surveys, it defines and describes the

only property that is delineated upon the map of the Norway survey of the Rancho Santa Paula y Saticoy, the only possible combination.'' It further appeared that by this survey and plat the rancho was divided into sections designated by figures in consecutive number, and these sections divided into quarters which were likewise numbered numerically, and that as delineated thereon the southwest quarter of section 12 was designated No. 31; that while there were many sections in the county numbered 12, there was no subdivision of any lands in the county of Ventura other than section 12, as shown upon said map, any quarter of which was numbered 31 and to which the description applied, and that it was applicable to said land and to no other section, tract or subdivision in said county. It thus appears that, while the description is incomplete and the identity of the land cannot be determined from the deed itself, its location can be readily determined by reference to the records of Ventura County. On behalf of defendant witnesses, after qualifying as surveyors, testified that they could not identify the land from the description in the deed. This may be conceded, but they did not testify or undertake to say that the land could not be identified by reference to the records of Ventura County and a process of elimination, as shown by the testimony of Barnard. And while it was admitted that this Norway map of the rancho had delineated thereon the land as described in the deed, it was not claimed or shown that there was any other tract or subdivision of land to which the description was applicable. On the contrary, all of defendant's witnesses testified that they knew of no other map or subdivision of lands in the county to which the description in the deed applied. The parol evidence offered clearly identified the land described in the deed as being the identical property described in the complaint as having been conveyed by John McKenna to his wife Norah Anna McKenna on November 10, 1890.

Moreover, we are of the opinion that the evidence is ample to support the finding of the court to the effect that at the time of the death of Norah Anna McKenna she had for more than twenty years next preceding, and that defendant as administrator of her estate at all times since her decease, had been in the open, notorious, exclusive, hostile, and continuous possession of the real estate described in the complaint under

a claim of ownership adversely to all the world. The evidence tends to show that after the death of John McKenna, which occurred May 23, 1891, Norah Anna McKenna with her children, the plaintiff, and J. Irving McKenna, who at the time was sixteen or seventeen years of age, continued to reside upon the land for about three years, during which time J. Irving McKenna, as a boy under the control of his parent, worked upon and cultivated the farm; that the proceeds of the sale of the products thereof were appropriated by his mother, deposited in her name and in every way controlled and checked out by her; that thereafter they removed from the ranch and from thence continuously to the time of the death of Norah Anna McKenna she exercised absolute control and dominion over the property, claiming it as her own and from time to time leasing the same and appropriating and claiming as her own the rents, issues, and profits thereof, without accounting or offering to account therefor, during all of which time she paid the taxes thereon, under the belief and claim that she had absolute title to the property, which belief and claim were shared in and recognized by defendant, not only during the time that he was living with his mother upon the ranch, but for a period of some fifteen years after he attained his majority, and that as administrator he returned the property in his inventory as belonging to the estate of his mother and out of the funds of the estate paid the taxes thereon. The fact that he labored under the belief that the deed from his father to his mother, the existence of which he at all times had knowledge, was a sufficient deed of conveyance until March, 1911, when he discovered what he conceived to be the insufficiency of the same, does not affect the prescriptive right resulting from the adverse occupancy, claim, and possession of the mother. There is no ground for appellant's contention that he was a tenant in common of the property with his mother. There is no evidence of such cotenancy. The possession and dominion of his mother over the property for a period of over twenty years, as shown by the evidence, was not only absolute and exclusive, but so clearly and openly manifested by her acts as to leave no question as to the fact that notice of the hostile character of her possession was im-

parted to defendant. (*Unger* v. *Mooney*, 63 Cal. 586, [49 Am. Rep. 100] ; *Feliz* v. *Feliz*, 105 Cal. 1, [38 Pac. 521].)

The judgment is a righteous one, should be and is affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 16, 1913.