[Civ. No. 6341. Third Appellate District.—January 31, 1940.]

DISTRICT BOND COMPANY (a Corporation), Respondent, v. WILLIAM M. HILLIKER et al., Appellants.

William M. Hilliker and Elizabeth Hilliker, *in pro. per.,* for Appellants.

Dryer, Castle & Richards for Respondent.

SCHOTTKY, J., *pro tem.*—This is an action to quiet title. The plaintiff framed its complaint in the ordinary form of an action to quiet title. The defendants in their answer denied all of the material allegations of the complaint. The court found in favor of the plaintiff, the findings and judgment following the allegations of the complaint.

The record in the case is very brief, and the facts appear to be as follows: On January 4, 1929, the city of Los Angeles issued bond No. 895, series 28, for the widening of Third Street, under the provisions of the Street Opening Bond Act of 1911. (Stats. 1911, chap. 630, p. 1192.) Said bond was in the principal amount of $440. (Exhibit AA.) The first principal payment, due July 1, 1929, was made, but no further payments were made and three and one-half years later, on December 1, 1932, notice of sale for default in payment was given and published. (Exhibits C and D.) Sale was held December 21, 1932, and the land sold to plaintiff. (Exhibit E.) After waiting more than two years plaintiff gave notice to redeem on March 21, 1934, and the city treasurer's deed was issued pursuant to said notice on April 18, 1934, and recorded May 4, 1934. (Exhibit AA.) On June 14, 1934, suit to quiet title by the same plaintiff and against the same defendants was commenced, being action No. 374824, and on December 28, 1934, judgment was made and entered therein that plaintiff take nothing. Thereafter, on May 3, 1935, notice to redeem was served on H. B. Hilliker, as occupant of the property in question, and on William M. Hilliker, defendant and owner of the property in question. (Exhibit F.) There being no redemption, the city treasurer issued his deed to District Bond Company dated June 5, 1935, which was recorded June 7, 1935 (Exhibit 1), and the action from which this appeal is taken was filed June 25, 1935.

It is, of course, the well-settled rule that street proceedings are *"in invitum"*, and as was said by the court in the case of *Chapman* v. *Jocelyn*, 182 Cal. 294, 300 [187 Pac. 962]: "Nothing is to be presumed against the owner of the lot and in favor of the proceedings upon a sale of property to enforce a lien for a tax or assessment."

Defendants and appellants attack the judgment upon the ground that it is not supported by the evidence, and contend that the proceedings that resulted in the deed relied upon by plaintiff were defective in at least nine particulars.

■ Appellants' first contention is that the certificate of sale was not recorded in the office of the county recorder, and such failure to record the certificate was fatal to the deed. Appellants quote section 17 of the act in question, which reads as follows:

"On receiving the certificate of sale, the recorder must file it, and make an entry in a book similar to that required by the city treasurer, the fee for which shall be fifty cents, and on presentation of the receipt of the redemption money, the recorder must, without charge, mark the word 'Redeemed', the date, and by whom redeemed, on the margin of the book where the entry of the certificate is made."

Respondent does not dispute appellants' statement that the certificate of sale was not recorded, but contends that such recordation was not required by the act.

We must of course take the act as it was in effect on the date the bond was issued, namely, January 4, 1929. On that date the act provided that the certificate of sale should be delivered to the purchaser by the city treasurer, but it did not require that the purchaser or anyone else should record it, although section 17, already quoted, did provide that upon receiving the certificate of sale the recorder must file it. No doubt it was contemplated by the author of the act that the certificate should be recorded, but it cannot be fairly said that the act does not require anyone to record, but only goes so far as to provide what the recorder shall do with it "on receiving it". No doubt the oversight was what caused the legislature in 1933 to amend this act by repealing section 17, and amending section 15, to provide that the treasurer "shall deliver the original certificate to the purchaser and shall record the duplicate in the office of the recorder".

Inasmuch as the act did not expressly require anyone to record the certificate of sale, we cannot hold that the failure to record it in this case is fatal to the deed.

■ Appellants' second contention is that the notice of sale was erroneous because it included a fifty-cent charge for the certificate of sale, and that the sale was void because the sale price included a charge of fifty cents for the certificate of sale.

The notice of sale, dated December 1, 1932 (Defendants' Exhibit C), after stating the default and the amount of principal and interest due, went on to state that *"unless the*

*amount of said bond, and the interest due thereon together with the cost of publication of this notice are paid"*, the property would be .sold on December 21, 1932. The notice then went on to say that "said sale will be made at public auction to the bidder offering to pay the *amount then due on said bond, together with the cost of publication of this notice and fifty cents for the certificate* of sale for the least portion of said lot or parcel of land offered for sale".

We believe that the notice of sale complies with section 11 of the act and that there is no error in providing in the notice of sale that the purchaser shall pay the fifty-cent charge for the certificate. Section 13 of the act provides that the "city treasurer must collect, in addition to the amount due on such bond the cost of publication of such notice, and fifty cents for the certificate of sale delivered to the purchaser". If the notice of sale provided that the owner must pay the fifty-cent charge for the certificate in order to prevent the sale, it would of course be in error, but it does not so provide. We see no error in including in the notice of sale that the purchaser must pay the fifty-cent charge for the certificate of sale, which section 13 of the act states that the city treasurer must collect. Certainly no possible injury can result to the owner through such inclusion, and it is only fair that prospective purchasers be advised of the fifty-cent charge for the certificate.

Likewise we see no error in including in the certificate of sale the item of fifty cents which the purchaser has paid.

The cases cited by appellants to the effect that the failure to state the correct amount due on the bond in the notice of sale makes the deed void are not applicable under the facts in the case at bar.

■ Appellants' third contention is that the notice to redeem was not served on all of the occupants of the property in question, and that therefore the deed is void.

Section 18 of the act provides that the purchaser "must, thirty days prior to the expiration of the time of the redemption, or thirty days before his application for a deed, serve upon the owner or agent of the property purchased, if named in such certificate of sale, and *upon the party occupying the property, if the property is occupied,* a written notice, etc.". (Emphasis added.)

It appears from the evidence that one Richard W. Malloy owned some apartments on the adjoining lot, and had from the owner of the lot here in dispute the right to have his tenants who owned automobiles park them on the front part of the lot. It was stipulated that a brother of appellant, Wm. M. Hilliker, occupied a structure of some kind at the rear of the lot and used it for sleeping purposes.

Service of the notice to redeem was served on applicant Wm. M. Hilliker, and upon his said brother, but no service was made upon Mr. Malloy, and appellants contend that by such failure, there was no sufficient service of notice "upon the party occupying the property".

The purpose of the provision for service of the notice to redeem is to insure notice to the owner of intention to apply for a deed, and the owner here not only had notice through service upon his brother who actually lived on the property, but through personal service on himself.

We believe that service upon a person actually living on the property is service upon "the party occupying the property", and that the implied finding of the trial court that Malloy was not an occupant of the property is sustained by the evidence.

Appellants' fourth contention is that the deed from the city treasurer is void, because the treasurer had no authority to issue a second deed.

We see no merit in this contention of appellants. Section 18 of the act provides that if the property is not redeemed within the time allowed by section 16 of the act, the city treasurer "must make to said purchaser, or his assignee, a deed to the property". There is nothing in the section or the act to compel the conclusion that if for any reason a deed issued by the treasurer is void because some necessary preliminary steps had not been complied with, another deed may not be issued, if the proper steps have been taken.

In the case of *Richards* v. *Sellers,* 104 Cal. App. 30 [285 Pac. 391], a case which declared a deed invalid because of insufficient service of notice to redeem, the court said at pages 32 and 33:

"Because the plaintiff did not serve the occupant and because the owner received no notice at all the service was incomplete and the owner's title was not divested. In making findings against the plaintiffs the trial court did not hold

that the plaintiffs had no rights. It merely held that the plaintiffs' deed was invalid. (4) By the terms of section 72 of the statute the payments theretofore made by the plaintiffs together with interest thereon constituted a lien. That lien still exists and will continue to exist until a redemption is had or a valid deed is made. In no respect did the trial court hold to the contrary.''

See, also, *Warden* v. *Bittleston Law & Collection Agency*, 41 Cal. App. 1 [181 Pac. 834].

The Street Opening Bond Act of 1911, which is the act involved in the case at bar, expressly provides in section 15 that the purchaser's lien is only divested by payment of the purchaser's money, and the cases cited hold that the issuance of an invalid or irregular deed does not affect the lien of the holder of the certificate of sale, or the power of the city treasurer to issue a subsequent deed.

We are unable to agree with appellants' fifth contention which is that there is a variance in description which rendered the deed void.

The property that plaintiff sought to quiet title to was described as ''Lot 5 less the westerly 20 feet in Hays Addition to the Sunset Tract'' and the description of the property used in the assessment and subsequent proceedings was ''Fractional Lot 5, Hay's Addition to the Sunset Tract''. Plaintiff introduced ample evidence to identify both descriptions as describing the same parcel of property.

In the case of *Warden* v. *Brandes*, 103 Cal. App. 744 [284 Pac. 1050], the court said:

''In *McLauchlan* v. *Bonynge*, 15 Cal. App. 239, it is said at page 242 [114 Pac. 798, 799]:

'' 'In order to identify the property by such description there should be evidence, not only of the existence of a map, but such map itself, with proof that it was the only map of any tract in the city of Los Angeles known as the Clifton tract existing at the time when the assessment was made, and showing that the lots in question were delineated thereon, should be presented to the court.'

''To the same effect is *Thompson* v. *McKenna* [22 Cal. App. 129, 133 Pac. 512], *supra*, and *Campbell* v. *Shafter* [162 Cal. 206, 121 Pac. 737], *supra*.

"Under the above decisions the plaintiff was entitled to introduce evidence that lot 78 described in the complaint and fractional lot 78 were the same. This could have been done by the method pointed out in *McLauchlan* v. *Bonynge, supra,* or any other appropriate method, but having failed to do so, the court was correct in granting the motion for a nonsuit."

 Appellants' sixth contention is that the deed is void, because it refers to and relies for its basis upon a nonrecorded deed, and fails also to make reference to the assessment number.

We have already discussed the point as to the certificate of sale not being recorded.

Appellants cite no section of the act or any authority that the deed must recite the assessment number. We do not find in the act any requirement that the certificate of sale shall recite the assessment number, but section 18 provides that the deed shall recite "substantially the matter contained in the certificate, and that no person has redeemed the property during the time allowed for its redemption".

 We find no merit in appellants' next contention that the notice to redeem should include the fifty-cent charge for service thereof. Section 18 of the act sets forth the matters to be included in the notice to redeem, and there can be found therein no requirement that the notice shall contain any such provision.

 Appellants' contention that the statement in the published notice of sale "that the name of the owner of the property is unknown" is untrue and fatal to the deed cannot be sustained. The notice of sale is dated December 1, 1932, and there is nothing in the record to show that the name of the owners of the property was known to the city treasurer on that date.

 Appellants' next contention is that the deed is void, "because the treasurer failed to enter in his book to whom the bond was delivered".

The evidence merely shows that the treasurer did not enter in the O & W Bond Register the name of the deliveree of the bond, but the record does not show that the city treasurer did not keep a book in which he entered a record of such bond, specifying its date, amount, to whom delivered, its duration, and a description of the lot against which issued, as re-

quired by section 5 of the act. This court will presume that the city treasurer performed his official duty in that respect. Furthermore, section 6 of the act makes the bonds issued under the act ''conclusive evidence of the regularity and validity of all proceedings thereto''.

Appellants' final contention is that a judgment in a former action was conclusive against respondent in the action in which this appeal is taken. The former judgment merely decreed that plaintiff take nothing; in other words that plaintiff was not the owner of the property at the time the first suit was begun. Thereafter plaintiff secured a new deed and filed the suit to quiet title. Appellants' answer denied plaintiff's ownership, but did not plead the former judgment in bar. We believe that as required by section 1962 of the Code of Civil Procedure ''such judgment or order must be alleged in the pleadings if there is opportunity to do so'', and that if appellants wish to rely upon the former judgment as conclusive as to the validity of the certificate of title, they should have set up such defense in their answer, as it cannot be said that they did not have opportunity to do so.

But even if such a defense was properly before the court, there is nothing in the record to show that there was anything adjudged by the former action except that at the time of its commencement respondent was not the owner of the property. The deed upon which respondent relies was acquired subsequently, and the law is well settled that ''a party is not estopped to assert a title or interest accruing subsequent to a judgment adjudicating his rights or title in the property in question''. (15 Cal. Jur., sec. 207, p. 165.) See, also, *Thorne* v. *McKinley Bros.*, 5 Cal. (2d) 704 [56 Pac. (2d) 204].

There is therefore no merit in appellants' contention that the former judgment is conclusive against respondent.

Section 19 of Street Opening Bond Act of 1911 declares that the deed is conclusive evidence of all things of which the bond upon which it is based is conclusive evidence, and *prima facie* evidence of the regularity of all proceedings subsequent to the issuance of the bond. The introduction of the deed therefore threw upon appellants the burden of showing a want of compliance with the precedent steps required by the statute. (*Empire Securities Co.* v. *Mathews*, 179 Cal. 239 [176 Pac. 160]), and this burden they did not meet. The

record in our opinion shows a substantial compliance with the provisions of the act.

The judgment of the court below should be affirmed. It is so ordered.

Pullen, P. J., and Tuttle, J., concurred.